### CITY OF VERO BEACH v. FLETCHER, Tax Assessor, et al.
No. 6935.

Circuit Court, Indian River County.
August 23, 1965.

Vocelle & Gallagher, Vero Beach, for plaintiff.

John R. Gould of Gould, Cooksey & Fennell and John R. Sutherland, all of Vero Beach, for defendants.

D. C. SMITH, Circuit Judge.

*Final decree:* This cause has heretofore come on for final hearing after trial before the court. Oral argument of counsel for the respective parties has been heard and briefs filed by them have been duly considered.

The plaintiff city of Vero Beach, a municipal corporation, seeks to enjoin the collection of a tax assessed and levied by Indian River County for the year 1964 against certain property owned by the city (ptf.'s exs. 3 through 61, and 63 through 67, both inclusive, in evidence).

The plaintiff in its complaint has scheduled the property involved in the following categories (ptf.'s ex. 62)—

Category 1 includes those portions of the property which are not under lease to any third party and which are a part of and in use as as part of the city's municipal airport and were so in use on January 1, 1964, and have been so in use ever since the execution and conveyance to the city of the property by the federal government.

Category 2 includes those portions of the property leased to third parties prior to June 16, 1961.

Category 3 includes those portions of the property leased to third parties for a valuable consideration since June 16, 1961.

Category 4 includes that portion of the property which was leased to the Los Angeles Dodgers prior to June 16, 1961.

Category 5 includes those portions of the property which are admitted to be exempt by the taxing authorities of Indian River County.

The question to be determined is whether or not the property is subject to taxation. In order to determine its taxability vel non, it is necessary to review the facts relating to the property in question, the use thereof, to examine the constitution and statutes of the state of Florida, the decisions of Florida appellate courts and the decisions of courts of other states.

All the property in question is owned by the city under the provisions of a quit claim deed executed on October 3, 1947 by the United States of America, acting by and through the War Assets Administrator (ptf.'s ex. 2), and pursuant to a resolution adopted by the city council of the city on May 18, 1943 (ptf.'s ex. 1).

It appears from such deed that the property was conveyed to the city under conditions and restrictions, providing—"that *all* of the property transferred hereby, hereafter in this instrument called Airport, shall be used for public airport purposes, and *only for such purposes.*" And in such resolution—"the city agrees that the Airport will be operated as such *and for no other purpose.*" (Italics throughout this decree have been supplied by the court.)

The evidence shows that that portion of the airport property not under lease and not physically in use at the moment is part of the buffer zone operation of the airport and for further expansion of the airport and is being used in conformity with the provisions of subsection C of section 1 of the resolution of the city council providing for the acquisition of the airport, which provisions are also contained in the deed conveying the airport property to the city and which are as follows—

"Insofar as is within its powers and reasonably possible, the city will prevent any use of land either within or outside the boundaries of the Airport, including the construction, erection, alteration, or growth, of any structure or other object thereon, which would be a hazard to the landing, taking off, or maneuvering of aircraft at the Airport, or otherwise limit its usefulness as an Airport."

The deed further provides—"the property transferred hereby may be successively transferred only with the approval of the CAA or the successor government agency and with the proviso that any such subsequent transferee assumes all the obligations imposed upon the party of the second part by the provisions of this instrument."

It is further provided in such deed that a breach of any of the reservations or restrictions in the deed shall constitute, at the option of the party of the first part, a reversion to the party of the first part.

Under the plain and explicit terms of the resolution of the city council and of the deed of conveyance, the property in question is expressly set aside for airport purposes and can be used for no other purposes except with the consent of the grantor, and is actually being used and intended to be used for such purposes.

The city contends that the question of the use of property for municipal purposes is one solely within the discretion of the governing authorities of the city and is not subject to control by the court and to hold otherwise would mean that the court could substitute its judgment for that of the governing board of the municipality as to the present or future need of the property for municipal purposes.

The city further contends that because all the property assessed by the tax assessor and involved in this action is included in the conveyance by the government to the city, none of it is subject to taxation except that portion thereof which may have been transferred either by deed or lease for a consideration to a third party, and that as to such property so transferred or leased, the question of tax liability is governed by the provisions of section 192.62, Florida Statutes, which was enacted by the Florida legislature and became effective as of June 16, 1961.

The provisions of the organic law—the constitution of the state of Florida relative to exemption of property from taxation— are contained in section 1 of article IX and section 16 of article XVI of the constitution. It will be noted that section 16 of article XVI is more restrictive in its provisions as to exemption than is section 1 of article IX. An examination of the two sections will show that section 1, article IX is the applicable provision rather than section 16 of article XVI with respect to tax exemption for municipalities.

In Florida Statutes Annotated the title of section 16, article XVI is—*"Corporate Property Subject to Taxation, Exception"*. This section relates to the property of corporations and provides that such property shall be subject to taxation unless it is held and used *exclusively* for certain purposes. On the other hand, section 1 of article IX is a clear grant to the legislature to exempt property for municipal purposes and is thus a broad grant of power leaving it within the province of the legislature to determine what municipal property shall be exempt.

In Rogers v. City of Leesburg, Fla. 1946, 27 So.2d 70, Justice Terrell in referring to these two sections of the constitution said—

"It is hardly necessary to state that both of these provisions, having been a part of the original Constitution, should

be interpreted so as to accord each a field of operation. It is a well known historical fact *that Section 16, Article XVI, was designed to reach the property of certain corporations for profit that were enjoying exemption from taxation under acts passed by the Legislature in 1855 and 1856.* (citing cases) *It was not intended to apply to general assessments, they having been covered by Section 1 of Article IX. The Legislature and the taxing officers have repeatedly recognized this distinction and have preserved it."*

Later in the same decision, it is further stated — "Except for the fact that certain railroads were enjoying exemption from taxation, Section 16 of Article XVI would not have been a part of the Constitution. Section 1, Article IX, covered the subject of tax assessments 'like the dew covers Dixie.' "

In Miller v. Doss, Fla. 1950, 46 So.2d 888, in an opinion again written by Justice Terrell, he went more thoroughly into the effect of the two quoted provisions of the constitution, observing that he had discussed these provisions with many of the members of the constitutional convention and said —

"Since the adoption of the Constitution of 1885, Section 1, Article IX has been the universal Baedeker to guide taxing officers in imposing tax assessments on 'all property both real and personal, excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes.' It appears now that sixty-five years after the adoption of the constitution, we are urged to discard this universal practice and hold that the property brought in question should be assessed under Section 16, Article XVI of the Constitution because it happened to be the property of a corporation. All the latter provision of the Constitution presumes to do is to make the property of such corporations 'subject to taxation', so in any event we are relegated to Section 1, Article IX for the means to do so."

"Section 1, Article IX of the Constitution clothes the legislature with a very liberal discretion in providing for a 'uniform and equal rate of taxation,' for a 'just valuation of all property, both real and personal,' and for exemption for '*municipal*, education, literary, scientific, religious or charitable purposes.' We think it comprehends the whole law for taxing real and personal property."

In construing the authority of the legislature to act pursuant to section 1 of article IX of the constitution, the Supreme Court in State v. McDavid, Fla. 1941, 200 So. 100, again speaking through Justice Terrell said—

"This Court has repeatedly said that it is competent for the legislature to make classifications and exemptions of certain properties from taxation for particular public purposes. We have also conceded power in the legislature to define a municipal purpose as contemplated by the provisions of the Constitution alluded to."

In the same, case, the court further said —

"The time was when a municipal purpose was restricted to police protection for such enterprises as were strictly governmental but that concept has been very much expanded and a municipal purpose may now comprehend *all activities* essential to the health, morals, protection, and *welfare* of the municipality."

Pursuant to the authority granted by section 1 of article IX of the constitution, the legislature of Florida has enacted legislation regarding the exemption from taxation of municipally owned property and the sections of the statutes so enacted which are applicable to the question before the court are section 192.06, section 192.62 and section 332.05.

Section 192.06 provides—

The following property shall be exempt from taxation:

(1) . . .

(2) All public property of the several counties, cities, villages, towns, and school districts in this state, used or intended for public purposes, including both real and personal property of all fire, hose and hook and ladder companies, except lands sold for taxes for the use of any counties, cities, villages, towns or school district; and including all property of municipally owned and operated public utilities held and used exclusively for municipal purposes.

Section 332.05 provides—

Any property acquired by a municipality pursuant to the provisions of this chapter shall be exempt from taxation to the same extent as other property used for public purposes.

Section 332.05 of the statutes places municipal airports clearly within the provisions of section 192.06 of the statutes relative to its non-taxability.

It is the contention of the tax assessor that those portions of the airport property which are not actually physically being used at the moment for a purpose which is visible to the eye as an airport use are subject to taxation. This contention is untenable. All of the property is set aside for airport purposes, and as long as it is so set aside, the court should not substitute its judgment for that of the municipal authority as to what is presently needed or intended to be used in the future for airport purposes. As a

matter of fact, all portions of the property sought to be taxed, except that which is under lease to third parties, are being used for airport purposes. Under the terms of the agreement between the city and the federal government for the conveyance of the property in question to the city, the city agreed, insofar as it was within its power to do so, that it would prevent any use of the land within the boundaries of the airport from having any growth, structure or other object which would be a hazard to the landing, taking off or maneuvering of aircraft at the airport, or which would otherwise limit its usefulness as an airport. Those portions of the property not leased and not having any physical evidence of use are a part of the buffer zone necessary to carry out this portion of the agreement between the city and the federal government. The Supreme Court of New Jersey had before it a similar situation involving a buffer area and held that it was exempt from taxation. See Moonachie v. Port of New York Authority, 185 Atl. 2d 207.

The defendants also contend that because certain portions of the airport property have been leased to third parties even though other portions of the airport property are unquestionably used for airport purposes, the entire airport property has lost its tax exempt status. This contention is also untenable. The total acreage of airport property is approximately 2,135.6 acres and the total acreage leased is approximately 144.29 acres.

In State v. Doss, Fla. 1942, 8 So.2d 17, the Supreme Court of Florida, again speaking through Justice Terrell, said —

"Approaching the point in issue, it is sufficient to say that by the best reasoned authority in this country when a property is owned by a charitable association or corporation and part of it used for the purposes of the association and the balance used for commercial or profit purposes, if severable that part used for the purpose of the corporation, that is to say for religious, scientific, *municipal*, educational, literary, or charitable purposes, may be exempt from taxation while that part used for profit may be taxed. We approve this rule."

In Simpson v. Bohon, Fla. 1947, 31 So.2d 406, the Supreme Court of Florida, speaking through Justice Adams, had under consideration the question of the taxability of the Elks Club in the city of Jacksonville. An examination of that decision will show that the Elks Club building consisted of three stories and a basement, part of which was used for commercial purposes and part of which was used for the purposes of the lodge. The action was brought to cancel certain city and county tax certificates for taxes levied against the property. Answers were filed show-

ing that these certificates represented taxes levied against that part of the property used for commercial and nonexempt purposes under the law. The lower court held that the entire property was exempt and ordered cancellation of the certificates. The Supreme Court held that the certificates being based upon taxes levied only on that part of the property used commercially were valid, and in referring to certain contentions of the appellants said —

"The distinguishing feature of this case lies in the fact that these taxes were levied only against the property used commercially. In the Rogers case, supra, the entire property was claimed exempt whereas here the only taxes assessed are against the portion used for commercial purposes. This method of assessment was approved by us in State, ex rel. Cragor Co. vs. Doss, 150 Fla. 491, 8 So.2d 17."

It thus appears that the Supreme Court of Florida has definitely laid down the rule that where property is otherwise exempt from taxation, the fact that a portion of same is used for nonexempt purposes does not cause the remainder to lose its exempt status.

It is true generally that taxation is the rule and exemption the exception in statutes providing for taxation — but this is not true when municipalities are involved. In State of Florida v. City of Pensacola, Fla. 1961, 126 So.2d 566, the Supreme Court of Florida said —

"The rule that a purported grant of a tax exemption is to be strictly construed against the claimant and in favor of the taxing authority is widely recognized in this and other jurisdictions. . . . * * * the rule of strict construction under discussion may not be invoked against a municipality asserting an exemption."

In Orange State Oil Co. v. Amos, Fla. 1930, 130 So. 707, the Supreme Court of Florida said —

"When considering the taxation of individuals, the rule is that exemption provisions will not be enlarged by construction, nor can they rest upon implication. Taxation is the rule; exemption is the exception which must be created by clear and definite terms.

"In respect to taxation of cities, however, the rule is otherwise. Inasmuch as taxation of public property would necessarily involve other taxation for the payment of taxes so laid, such property is usually excluded by implication from the operation of laws imposing general taxes, unless there is a clear intent to include it."

In Saunders v. City of Jacksonville, Fla. 1946, 25 So.2d 648, the Supreme Court of Florida said —

"Many of our opinions have been cited to sustain the principle that exemptions from taxes are frowned upon and each claim should be strictly construed. This rule does not apply where the question is raised by a municipality asserting the exemption by virtue of a statute duly passed pursuant to the Constitution. In the latter case exemption is the rule and taxation is the [exception]."

In Gwin v. City of Tallahassee, Fla. 1961, 132 So.2d 273, the Supreme Court of Florida specifically quoted the above-quoted language in the Saunders case and reaffirmed its applicability and further said —

"If we were dealing here with the property of a private corporation, claimed to be exempt, the county would be in a stronger position. *If property owned by the municipalities of this State held and used for a valid municipal purpose is to be subjected to taxation by another political body, we think the legislative authority for so doing should be clear and unambiguous.*"

In the case presently before the court for determination, not only is there no clear and unambiguous authority for Indian River County to tax the municipally-owned and operated airport of the city of Vero Beach, but there is a clear and unambiguous exemption of such property from taxation as contained in section 192.06, section 192.62 and section 332.05 of the Florida Statutes.

Under the constitution of Florida and sections 192.06 and 332.05, Florida Statutes, the property in question is clearly exempt from taxation except as to that portion of the property which has been leased to private individuals in connection with a profit making venture. As to that portion of the property — keeping in mind the overwhelming weight of authority, that exemption is the rule and taxation the exception — it appears that prior to June 16, 1961, there was no statutory law in this state relative to the taxability of property municipally owned but leased to third parties in connection with a profit making venture and the taxability thereof depended upon the decisions of the Supreme Court for its validity and these decisions in some instances appeared to be in conflict. So the legislature of Florida enacted what is now section 192.62, Florida statutes 1963, to govern such cases. This section is the only statute in the state relative to the taxability of municipal property leased to third parties in connection with a profit making venture, and provides —

(1) Any real or personal property which for any reason is exempt or immune from taxation but is being used, occupied, owned, controlled or

possessed, directly or indirectly by a person, firm, corporation, partnership or other organization in connection with a profit making venture, whether such use, occupation, ownership, control or possession is by lease, loan, contract of sale, option to purchase or in any wise made available to or used by such person, firm, corporation, partnership or organization, shall be assessed and taxed to the same extent and in the same manner as other real or personal property.

(2) This section shall not apply to property described in subsection (1) when:

\* \* \*

(c) The property is owned or used by the state, any county, municipality, or public entity or authority created by statute and is leased or otherwise made available to such person, firm, corporation, partnership or organization by such public body for a consideration in the performance by the public body of a public function or public purpose authorized by law, *or which property prior to the effective date of this act was leased for valuable consideration for purposes not otherwise exempt hereunder;*

Section 192.62 was enacted as chapter 61-266, General Laws of Florida, 1961. Its title provided —

"AN ACT relating to taxation, amending Chapter 192, Florida Statutes, by adding a section numbered 192.62, to provide for the taxation of exempt or immune real and personal property which is used, occupied or possessed for profit; *providing exceptions thereto;*" . . .

It appears that the legislature in enacting what is now section 192.62 of the Florida Statutes intended to provide for the taxation of municipally-owned property used by third parties for profit, with exceptions, and one of these exceptions is that the act does not apply to property which was leased prior to its enactment. The language is clear and can mean only that because there was no statute on the subject of taxability of municipally-owned property when leased for profit to third parties, the legislature in its wisdom decided that there should be a statute which would clearly set forth the tax status of such property — and section 192.62 was enacted for such purpose. Because section 192.06 exempts all municipally-owned property used or intended for public purposes from taxation, section 192.62 is a limitation upon this exemption and now spells out that although the property in question is owned by a municipality, when it is leased in connection with a profit making venture, it loses its tax exempt status — but that this statute should be prospective in application only and would not be applicable to property so leased prior to its enactment. See Attorney General's Opinion 063-73, dated July 8, 1963, Biennial Report of Attorney General, 1963-1964, page 113.

The court finds and determines that those portions of the property included in category 1 which are not under lease to any third party and which are a part of and in use as a part of the mu-

nicipal airport of the city of Vero Beach and were so in use on January 1, 1964, and have been so in use ever since the execution and conveyance to the city of the property by the federal government; those portions of the property included in category 2 which were leased to third parties prior to June 16, 1961, the effective date of chapter 61-266, now section 192.62, Florida Statutes 1963; and that portion of the property included in category 4, being the portion of the airport property which was leased to the Los Angeles Dodgers prior to June 16, 1961, all as listed on plaintiff's ex. 62, under section 1 of article IX of the state constitution, and sections 192.06, 192.62 and 332.05, Florida Statutes, 1963, are exempt from taxation by Indian River County. The city of Vero Beach is not contesting the taxes assessed and levied on the portions of the property included in category 3 which were leased to third parties for a valuable consideration since June 16, 1961, and the portions of the property included in category 5 are admitted by the defendants to be exempt and are not in controversy.

Upon consideration, it is thereupon ordered, adjudged and decreed —

That the taxes attempted to be assessed and levied by the defendant, Homer C. Fletcher, as tax assessor of Indian River County, and the defendants, Robert W. Graves, B. Q. Waddell, Jerre J. Haffield, D. B. McCullers and Donald MacDonald, as and constituting the board of county commissioners of Indian River County, and Ray E. Green, as comptroller of the state of Florida, and Indian River County, a political subdivision of the state of Florida, respectively, against the properties included in category 1, which are not under lease to any third party and which are a part of and in use as a part of the municipal airport of the city of Vero Beach, and were so in use on January 1, 1964, and have been so in use ever since the execution and conveyance to the city of Vero Beach of said property by the federal government, against the properties included in category 2, which were leased to third parties prior to June 16, 1961, and against the property included in category 4, which was leased to the Los Angeles Dodgers prior to June 16, 1961, are hereby vacated, set aside, held for naught, and decreed to be null and void, separately and severally, and the defendant, Homer C. Fletcher, as tax assessor of Indian River County, and the defendants, Robert W. Graves, B. Q. Waddell, Jerre J. Haffield, D. B. McCullers, and Donald MacDonald, as and constituting the board of county commissioners of Indian River County, and Ray E. Green, as comptroller of the state of Florida, and Indian River County, a political subdivision of the state of Florida, and their successors in office, respectively, be and they are hereby, severally, per-

manently enjoined and restrained from assessing or attempting to assess said properties for the year 1964, and for all subsequent years, as long as said properties are owned and used or intended to be used by the city of Vero Beach for public purposes or are leased to a third party or parties by the city of Vero Beach by and under a lease which was executed and delivered prior to June 16, 1961.

That the defendant, Troy E. Moddy, as tax collector of Indian River County, be and he is hereby permanently enjoined and restrained from attempting to collect or collecting any taxes assessed and levied for Indian River County against the property, or any portion or portions thereof, identified and described in categories 1, 2 and 4 in paragraph 1 above for the year 1964 and all subsequent years, as long as said properties are owned and used or intended to be used by the city of Vero Beach for public purposes or are leased to a third party or parties by the city of Vero Beach by and under a lease which was executed and delivered prior to June 16, 1961, and said defendant is permanently enjoined and restrained from attempting to advertise and sell, from advertising and selling and from issuing and delivering any tax certificate or certificates covering said property, or any portion or portions thereof, for any tax assessed and levied against same by Indian River County as above limited.

That all parties shall pay the costs incurred by them herein and the same are taxed against them, respectively.